[No. 18362.   Department Two.—November 19, 1895.]

# MARY ELLA SMITH ET AL., RESPONDENTS, *v.* PAT-RICK HAWKINS, APPELLANT.

WATER RIGHTS—APPROPRIATION—EXCESS OF WATER—FINDING AGAINST EVIDENCE.—Where the plaintiff claims the waters of a creek by virtue of a prior appropriation, and the defendant by a subsequent diversion and prescriptive right, a finding that, during the time the defendant has diverted the water, an excess has flowed in the creek above the capacity of both ditches, is not sufficiently supported by the mere observation of the trial judge who visited the premises once near the close of the rainy season, just prior to the judgment, where the other uncontradicted evidence adduced upon the trial shows that all of the water of the creek was taken in one of the ditches during one season.

ID.—RIGHTS OF APPROPRIATOR OF WATER—LICENSE—EASEMENT—CONGRESSIONAL GRANT.—An appropriator of water which is conveyed across the public domain is a licensee of the general government; but when such part of the public domain passes into private ownership, it is burdened by the easement granted by the United States to the appropriator, who holds his rights against the land under an express grant of Congress by the act of 1866.

ID.—ACQUISITION OF PRESCRIPTIVE RIGHT.—A prescriptive right cannot be acquired against the United States, and can be acquired only by one claimant against another private individual; and one who claims a right by prescription must use the water continuously, uninterruptedly, and adversely for a period of at least five years, after which time the law will conclusively presume an antecedent grant to him of his asserted right.

ID.—CONSTRUCTION OF CODE—EXTINGUISHMENT OF SERVITUDE ACQUIRED BY ENJOYMENT—PRESCRIPTIVE RIGHT.—Section 811 of the Civil Code, which provides that when a servitude is acquired by enjoyment, disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment extinguishes the servitude, deals only with the extinguishment of servitudes resting upon prescriptive right, and not of one conferred by express grant from the United States to a prior appropriator.

ID.—DISUSE OF WATER APPROPRIATED—FORFEITURE OF RIGHT—PERIOD OF DISUSE—CONSTRUCTION OF CODE.—Section 1411 of the Civil Code, which declares that the appropriation of water must be for some useful or beneficial purpose, and that, when the appropriator, or his successor in interest, ceases to use it for such purpose, the right ceases, deals with the forfeiture of the right by nonuser alone as distinguished from abandonment; and, by analogy, this section must be construed as making a cessation of the use by the appropriator work a forfeiture of his right, where there is a failure to make any beneficial use of the water for a period of more than five years, and, in such case, a subsequent appropriator for a beneficial use acquires a right to the water.

APPEAL from a judgment of the Superior Court of Nevada County.   JOHN CALDWELL, Judge.

The facts are stated in the opinion of the court.

*C. W. Kitts,* for Appellant.

Five years' disuse of a water right constitutes abandonment. (Civ. Code, sec. 811; *Davis* v. *Gale,* 32 Cal. 27; 91 Am. Dec. 554; *American Co.* v. *Bradford,* 27 Cal. 361; *Union Water Co.* v. *Crary,* 25 Cal. 504; 85 Am. Dec. 145.)

*P. F. Simonds,* for Respondents.

An abandonment takes place only when one in possession of land leaves with the intention of not again resuming possession, and it must be made to appear affirmatively by the party relying upon it. (*Moon* v. *Rollins,* 36 Cal. 333; 95 Am. Dec. 181.) There can be no adverse possession of a water right, and title by prescription cannot be acquired, unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom those acts are performed, and to raise the presumption of a grant of an easement as the only hypothesis on which to account for his failure to complain thereof. (*Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181; *Alta Land Co.* v. *Hancock,* 85 Cal. 226; 20 Am. St. Rep. 217.)

THE COURT.—Action begun in October, 1892, to quiet the alleged title of plaintiffs to a dam, ditch, and water right for the diversion of the waters of Wolf creek in Nevada county. As early as the year 1862 one John Ross was in possession of the ditch and sold water from the same. The ditch claimed by plaintiffs is two-thirds of a mile in length; its original capacity was four hundred and fifty-seven inches of water, though it seems to be now so filled up as to be capable of carrying about one hundred inches only. Plaintiffs claim in virtue of a deed to them executed by Ross in March, 1888, which, for the purposes of the decision, we shall assume was sufficient to convey his title to the property in dispute. Since the year 1875 taxes have been annually assessed against such property and paid by Ross and his suc-

cessors, the plaintiffs. In 1890 it was leased by plaintiffs to persons who made no use of it, but who paid two months' rental therefor at fifteen dollars per month.

Defendant owns a piece of land lying below the head of the Ross ditch and riparian to said creek; one-fourth of a mile of the length of such ditch is on defendant's said land, and was there constructed before defendant settled on the same; he having acquired title to the land under the federal homestead laws, the patent therefor was issued to him in 1891. In 1879 the defendant constructed a ditch tapping the creek about fifty feet below the Ross dam and having a capacity of two hundred inches of water under six-inch pressure; and, by that means, for thirteen years next before the commencement of this action, continuously, uninterruptedly, with a claim of right, peaceably, and with the knowledge of plaintiffs and said Ross, defendant diverted such water to the extent of the capacity of his ditch, and used the same for agricultural purposes on his said land. For the period of five years and more next before the commencement of the action, the dam, ditch, and water right claimed by plaintiffs have not been used by Ross, or any one who has succeeded to his interest, for any useful or beneficial purpose; neither he nor they have ever owned any property below the head of that ditch to which the water could be applied; for any purpose of profit its use was contingent on its sale or rental to other persons; and this occurred very infrequently. The court found that plaintiffs are the owners of the property claimed by them; that enough water flows in the creek to fill both ditches to their full capacity; that the use of the water by defendant has not been adverse; that his rights to the water are subordinate to those of plaintiffs; and gave judgment in plaintiffs' favor. We think these conclusions are contrary to the evidence in several particulars.

1. The finding that during the time defendant has diverted the water an excess has flowed in the creek above the capacity of both ditches finds support in an

observation only of the judge of the court below who visited the premises just prior to the judgment in the action—rendered April 3, 1893—and then saw water flowing in the creek as stated in the finding. This single observation, made near the close of the rainy season, is wholly insufficient to sustain the finding in view of other uncontradicted evidence that during one season all of the water of the creek was taken in one of the ditches.

2. Plaintiff's predecessor in interest appropriated water by means of his ditch, and conveyed it over and across the land of the defendant, which, at the time of appropriation, was a part of the public domain. While the rights of rival claimants and appropriators, as between themselves, had for a long time been recognized and adjusted, both by mining custom and adjudications in the state courts, it was not until 1866 that they met with federal cognizance and sanction. In that year the United States conferred upon those who had or who might thereafter appropriate water, and conduct the same over the public land, a license so to do; and further provided that all patents granted, or pre-emptions or homesteads allowed, should be subject to any such vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as might have been acquired under or recognized by the act. (U. S. Rev. Stats., secs. 2339, 2340.)

An appropriator of water under these circumstances, and while the land which he subjects to his necessary uses continues to be part of the public domain, is a licensee of the general government; but when such part of the public domain passes into private ownership it is burdened by the easement granted by the United States to the appropriator, who holds his rights against this land under an express grant. In this essential respect, that is to say, in the origin of the title under which the servient tenement is subjected to the use, one holding water rights by such appropriation differs from one who holds water rights by prescription.

The differences are twofold. A prescriptive right could not be acquired against the United States, and can be acquired only by one claimant against another private individual. Again, such an appropriation, to perfect the rights of the appropriator, does not necessitate use for any given length of time, while time and adverse use are essential elements to the perfection of a prescriptive right. One who claims a right by prescription must use the water continuously, uninterruptedly, and adversely for a period of at least five years, after which time the law will conclusively presume an antecedent grant to him of his asserted right.

Section 811 of the Civil Code, subdivision 4, discussing the extinguishment of servitudes, declares: When the servitude is acquired by enjoyment, disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment extinguishes the servitude. That this section cannot in strictness be applied to rights under such an appropriation as we have been discussing becomes obvious when, as above pointed out, it is considered that there is no period prescribed for acquiring title to such rights. Section 811, therefore, deals with the extinguishment of servitudes resting upon prescriptive right, a right vesting by reason of continued adverse enjoyment.

Section 1411 of the Civil Code declares that the appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose, the right ceases. This section deals with the forfeiture of a right by nonuser alone. We say nonuser, as distinguished from abandonment. If an appropriator has, in fact, abandoned his right, it would matter not for how long a time he had ceased to use the water, for the moment that the abandonment itself was complete his rights would cease and determine. Upon the other hand, he may have leased his property, and paid taxes thereon, thus negativing the idea of abandonment, as in this case, and yet may have failed for many years to make,

any beneficial use of the water he has appropriated. The question presented, therefore, is not one of abandonment, but one of nonuser merely, and, as such, involves a construction of section 1411 of the Civil Code. That section, as has been said, makes a cessation of use by the appropriator work a forfeiture of his right, and the question for determination is, How long must this nonuser continue before the right lapses?

Upon this point the legislature has made no specific declaration, but, by analogy, we hold that a continuous nonuser for five years will forfeit the right. The right to use the water ceasing at that time, the rights of way for ditches and the like, which are incidental to the primary right of use, would fall also, and the servient tenement would be thus relieved from the servitude.

In this state five years is the period fixed by law for the ripening of an adverse possession into a prescriptive title. Five years is also the period declared by law after which a prescriptive right depending upon enjoyment is lost for nonuser; and for analogous reasons we consider it to be a just and proper measure of time for the forfeiture of an appropriator's rights for a failure to use the water for a beneficial purpose.

Considering the necessity of water in the industrial affairs of this state, it would be a most mischievous perpetuity which would allow one who has made an appropriation of a stream to retain indefinitely, as against other appropriators, a right to the water therein, while failing to apply the same to some useful or beneficial purpose. Though during the suspension of his use other persons might temporarily utilize the water unapplied by him, yet no one could afford to make disposition for the employment of the same, involving labor or expense of any considerable moment, when liable to be deprived of the element at the pleasure of the appropriator, and after the lapse of any period of time, however great.

The failure of plaintiffs to make any beneficial use of the water for a period of more than five years next pre-

ceding the commencement of the action, as found by the court, results from what has been said in a forfeiture of their rights as appropriators.

The judgment and order are reversed.